Argued and submitted November 2, 1983, reversed January 17, 1984

In the Matter of the Estate of
Ruth Esther Arnold, Deceased.

BONNER et al,
*Objectors-Petitioners on Review,*

*v.*

ARNOLD,
*Personal Representative-Respondent on Review.*

(TC 78-120-P, CA A26113, SC 29799)

676 P2d 209

Wally P. Martin, Grants Pass, argued the cause and filed the brief for petitioners on review.

Harrison R. Winston, Roseburg, argued the cause and filed the brief for respondent on review.

CAMPBELL, J.

Lent, J., specially concurred and filed an opinion in which Linde, J., joined.

## CAMPBELL, J.

This case presents the question whether a decedent's estate is liable for contribution to the surviving tenant toward a debt secured by real property which passes to the joint owner and obligor by right of survivorship. We hold that it is not.

Ruth Arnold and her son, John Arnold, purchased real property together, holding it as joint tenants with a right of survivorship.[1] At the time of Ruth Arnold's death the two, as co-owners and coobligors, owed approximately $40,000, evidently secured by trust deeds, on the purchase price.

No will was found. John Arnold was appointed the personal representative of his mother's estate. He took the position that her estate was liable for one-half the balance due on the purchase price of the real estate in question, as well as for one-half of the property taxes that accrued both before and after his mother's death. The other four heirs, John Arnold's half sister and three half brothers, filed objections in the final accounting to these charges.

The trial court found these objections proper, holding that because Ruth Arnold's estate no longer had any interest in the real property after her death, it should not contribute to the debts thereon.

John Arnold appealed from this order. The Court of Appeals reversed on the question of contribution on the debt, reasoning that the right of contribution between coobligors for the purchase price of a property survives death, just as an obligation to any other debtor does under ORS 115.305.[2]

The objectors then petitioned this court for review. We reverse the Court of Appeals.

---

[1] Joint tenancy was abolished by ORS 93.180. The actual form of ownership of this property is not in question, but we assume that the mother and son were cotenants who held the property with concurrent life estates and indestructible contingent remainders. *Halleck v. Halleck, et al* 216 Or 23, 40-41, 337 P2d 330 (1959). John Arnold received sole ownership of the property upon his mother's death, and the property was never an asset of the estate.

[2] The Court of Appeals affirmed the trial court's holding that the mother's estate is not liable for property taxes accruing either before or after her death. John Arnold did not appeal this affirmation so the question is not before us.

This is a case of first impression. Other jurisdictions have considered the question of contribution by a deceased spouse's estate for a debt owed on property owned by husband and wife as tenants by the entirety. The majority of these jurisdictions holds that the estate of the deceased spouse may be required to pay contribution for its share of the remaining debt, viewing the question in the same manner as did the Court of Appeals. *Pietro v. Leonetti,* 30 Ohio St2d 178, 283 NE2d 172 (1972). Other courts have refused to require contribution, some reasoning that contribution is an equitable device, and because the estate will not be benefitted by the payment of this debt, equity does not require it. *Florio v. Greenspan,* 340 Mass 642, 165 NE2d 753 (1960). *See generally,* Annot., 76 ALR2d 1004 (1961).[3]

If a person looks only at the fact that the deceased incurred a debt, it appears that ORS 115.305 should determine the outcome:

> "All causes of action or suit, by one person against another, survive to the personal representative of the former and against the personal representative of the latter."

■ We agree that contribution is an equitable device, and equity does not require contribution in this instance because the estate would not benefit. We must look beyond the debt itself and examine the effect of requiring contribution from the decedent's estate to the surviving tenant in order to do equity. The factual record is sparse in this case; the parties presented a narrative statement in lieu of a transcript that does not reveal the sort of property that was purchased or the reason that the mother and son held it with a right of survivorship. It is clear, however, that if the law would require contribution from the mother's estate for one-half the debt, the estate would receive no benefit because at the time of the mother's death the entire property vested solely in the son. Contribution is an equitable remedy used to prevent unjust enrichment. If it were applied in this case, it would result in unjust enrichment rather than prevent it. If the property had

---

[3] It is important to note that all the cases collected in this annotation, as well as all other cases we were able to find, dealt with property owned by husband and wife. It is possible that the majority rule is a form of "widow law", allowing the surviving spouse additional benefits from the deceased spouse's estate based more on a sense of equity in the particular situations rather than required by law.

been held as tenants in common and the estate paid half of the joint obligation, the estate would benefit by an increase in its equity. In this case, however, the estate would be $20,000 poorer, with nothing to show for the expenditure.

We believe the better view is to recognize that joint ownership with the right of survivorship is generally a form of estate planning. Although at common law the exoneration of real property from encumbrances was favored, the Oregon Legislature has taken the opposite stance. Our statutory scheme makes it clear that had Ruth Arnold devised this land to her son, rather than holding it with him with the right of survivorship, John Arnold could not expect the estate to pay any part of the debt. Because this was a voluntary encumbrance, the estate could discharge the debt only if the will specifically so directed, pursuant to ORS 115.255:

"(1)   As used in this section:

"(a)   'Voluntary encumbrance' means any mortgage, trust deed, security agreement, pledge or public improvement assessment lien, or any lien arising from labor or services performed or materials supplied or furnished, or any combination thereof, upon or in respect of property.

"* * * * *

"(2)   If property upon which an encumbrance exists on the date of the death of the testator is specifically devised, the devisee takes it subject to the encumbrance, and the personal representative is not required to make any payment on account of the obligation secured by the encumbrance, whether or not the testator was personally liable on the obligation secured by the encumbrance, except as provided otherwise in the will or in subsection (3) or (4) of this section.

"(3)   Unless the will provides otherwise, the devisee of specifically devised property may require that an encumbrance thereon be fully or partially discharged out of other assets of the estate not specifically devised, if:

"(a)   The encumbrance is an involuntary encumbrance; or

"(b)   The encumbrance is a voluntary encumbrance and:

"(A)   The will specifically directs full or partial discharge of the encumbrance out of other assets; * * *."

A direction to exonerate from encumbrance must be specific. ORS 115.001:

"A mere testamentary direction to pay debts, charges, taxes or expenses of administration shall not be considered a direction for exoneration from encumbrances."

In this case, contribution for half the debt still owing would be analogous to partial exoneration. Exoneration absent specific direction is disfavored because it might easily frustrate a testamentary scheme or expected equality of an intestate distribution.

■    Our decision gives a testator maximum flexibility in planning the disposition of property, and allows the intention of the testator to control, as required by ORS 112.227.[4] It allows a person who finds the statutory intestate division to be equitable to rely on that distribution. If we were to hold that as a matter of law a decedent's estate is liable for contribution to the survivor toward a debt on property that passes to a joint owner by right of suvivorship, any other intention expressed in a will would be ineffective. A testator's direction in a will to ignore a certain debt cannot be given effect. The Court of Appeals decision restricts the options available to a person planning the distribution of his assets, and could create a trap that could catch even the wary.

Assume that a woman with three children and a $60,000 estate wants to divide her estate equally among her three children. Because of special needs, she provides a $20,000 down payment on a house for one child, Tom, and both she and Tom sign the trust deed for an additional $80,000. The two hold the property jointly with right of survivorship. In her will she would devise $20,000 to each of her other two children in order to achieve equality. Our hypothetical mother would reasonably assume that she had successfully guaranteed that each child would receive approximately one-third of her estate. However, if the Court of Appeals decision were the law, the upshot would be that Tom would actually receive all of the estate (the $20,000 down payment and the additional $40,000 as contribution toward the joint debt), and the remaining two children would receive

---

[4] ORS 112.227 states:

"The intention of a testator as expressed in his will controls the legal effect of his dispositions. The rules of construction expressed in this section, ORS 112.230 and 112.410 apply unless a contrary intention is indicated by the will."

nothing. This would be true even if in the will the mother directed that her estate not be liable for contribution toward this joint debt because all legal debts must be paid. Also, if Tom died before his mother did, and left a widow and young children, it is doubtful that his intention would be to gut his estate, depriving his immediate family, for the benefit of his mother.

Our holding today does not mean that one may not provide by a will or otherwise for the discharge of a debt secured by real property that passes by right of survivorship. However, we hold that absent such a clear expression of intent to the contrary, a decedent's estate is not liable to the surviving tenant for contribution to such a debt.[5]

Reversed.

Lent, J., filed a specially concurring opinion.

**LENT, J.,** specially concurring.

I concur in the result reached by the majority, but I would do so by creating a presumption and applying it to this particular set of facts.

I believe that whether the survivor should be entitled to contribution from the estate of the deceased tenant should be dependent upon the intent of the tenants. Where that can be ascertained under the law of evidence, that intent should control rather than creating and applying a rule of law which may actually do violence to the intent of the tenants.

It may be difficult to ascertain that intent in any given case; therefore, I would favor creation of certain presumptions to assist in that endeavor.[1]

---

[5] This opinion only considers forced contribution demanded by the surviving tenant and coobligor. It does not attempt to address any rights of an obligee.

[1] The Oregon Evidence Code contains a list of presumptions, but the list is not exclusive. OEC 311(2) recognizes that other presumptions may be found in statutes outside the Oregon Evidence Code. The Official Legislative Comment expressly refers to the fact that the judiciary may create still other presumptions:

"The enumeration of presumptions in this rule does not impair the integrity of judicially created presumptions; nor does it affect the power of the courts to create new presumptions in the future."

Comment to OEC 311.

Where the debt which encumbers the property is incurred for the acquisition of the property by the tenants, I find it most reasonable to presume that the parties intended that the survivor, because he gains the entire interest of the tenants in the property, should, as between himself and the deceased tenant's estate, also bear the entire burden of discharging the debt.

On the other hand, where the debt is not incurred to acquire the property, common sense takes me in a different direction. For instance, where two persons who already own property as cotenants with right of survivorship borrow money and mortgage or otherwise encumber the property to secure the debt thus created, and each takes a share of the borrowed funds for his own purposes, I find that it is reasonable to expect that the parties intended that the surviving tenant should have the right, as between himself and the deceased tenant's estate, to exact contribution in the proportion dictated by the share of the money taken by the tenant who dies first. That is because the latter's assets were enhanced by his share of the money which he took at the time of borrowing.

As did the majority, I illustrate by example. The cotenants, each for his own purpose, desires to borrow money. They borrow $10,000 and execute and deliver their joint and several note and mortgage on the property to the creditor. Each takes $5,000 for his own purposes. One dies and the other thereupon becomes owner of the property. The estate of the deceased tenant has a $5,000 asset (perhaps in some other form than money, such as stocks or bonds or other property purchased or improved with the proceeds of the loan) which it would not have had except for the $5,000 borrowed. Had the deceased lived until the obligation were due, he would have had to pay it from his assets. Why should not his estate, as between it and the surviving tenant, have to satisfy the obligation? The parties entitled to distribution of the assets of the estate would be in no different position than if their decedent had never borrowed the money. Had the money not been borrowed, the property would have passed to the survivor, and the decedent's heirs would not have had to discharge an indebtedness, but there would also be $5,000 less assets in their decedent's estate.

As the majority notes at the outset of the opinion, the money in this case was owed on the purchase price. The record does not contain evidence from which the intent of the parties can be divined. Applying the presumption that I would create, the intent of the tenants would be presumed to be that the survivor, John Arnold, as between the parties to this litigation, should bear the entire obligation of discharging the indebtedness.

Linde, J., joins in this specially concurring opinion.