Guinness Import Company *vs.* Guy DeStefano, Jr.

No. 87-607.

Norfolk.    January 5, 1988. — February 4, 1988.

Present: Grant, Armstrong, & Warner, JJ.

*Negotiable Instruments*, Defenses, Accommodation party. *Uniform Commercial Code*, Defenses, Accommodation party. *Practice, Civil*, Summary judgment.

In an action on a promissory note, summary judgment for the plaintiff was properly entered where the plaintiff produced the note and established the genuineness of the defendant's signature thereon, and where the defendant failed to allege specific facts to support his contentions that he had signed as a witness attesting to the signature of another; that he had signed the note only for the accommodation of the plaintiff; that, because the plaintiff did not allege facts to show the defendant signed as an accommodation to his comaker, he was to be treated as an ordinary maker, not liable on his promise to pay in the absence of consideration; and that there had been an understanding, prior to delivery of the note, that the defendant was not to be held personally liable thereon. [368-371]

CIVIL ACTION commenced in the Superior Court Department on January 9, 1986.

A motion for summary judgment was heard by *Ernest S. Hayeck*, J., sitting under statutory authority.

*Evan T. Lawson* (*Laura W. Morgan* with him) for the defendant.

*Michael J. Lacek* for the plaintiff.

ARMSTRONG, J. The plaintiff (Guinness) brought suit on a promissory note for $228,000 and, having produced the note and established the genuineness of DeStefano's signature thereon, cast on DeStefano the burden of establishing a defense. See G. L. c. 106, § 3-307(2); *Coupounas* v. *Madden*, 401 Mass. 125, 129 (1987). In effect, this meant that Guinness was entitled to summary judgment under Mass.R.Civ.P. 56(c),

365 Mass. 824 (1974), unless DeStefano, by proper affidavits or otherwise, "set forth specific facts showing that there [was] a genuine issue for trial." Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 554 (1976). DeStefano appeals from a judgment against him entered under the rule, claiming that the affidavit he filed in opposition to the motion showed specific facts that would constitute defenses and thus necessitated trial.

DeStefano signed the note unambiguously as comaker with Considine Boston Distributing Company, Inc. (Considine), a wholesaler of alcoholic beverages that was at the time of the suit in bankruptcy proceedings. The note begins: "For value received, the undersigned, CONSIDINE BOSTON DISTRIBUTING COMPANY, Inc., a Massachusetts corporation, . . . and GUY DESTEFANO, JR., an individual . . . (hereinafter referred to collectively as the "Makers"), hereby jointly and severally promise to pay to the order of the GUINNESS IMPORT COMPANY, a New York Corporation . . . the principal sum of . . . ." When the note was signed in July, 1985, DeStefano (according to his affidavit) had no financial interest in Considine but was a prospective purchaser of its stock or assets and was "review[ing] the operations of Considine from an internal position and as the representative of Richard Gordon [Considine's president] to see if it could be made profitable and worth recapitalization." Considine was indebted for an amount in excess of the note to Guinness, which demanded the note presumably to facilitate collection of the antecedent debt. DeStefano originally signed Gordon's name to the note, as authorized by Gordon and his attorney. Thinking better of it, DeStefano crossed out that signature. Later, in the offices of the attorney, Gordon himself signed the note for Considine as "pres but not individually," and DeStefano signed for himself without qualification. These signatures appeared on separate lines at the lower right of the note's final page, a place customarily reserved for the signatures of makers. See Uniform Commercial Code comment to G. L. c. 106, § 3-402; *First Safety Fund Natl. Bank* v. *Friel*, 23 Mass. App. Ct. 583, 584-585 (1987); 2 Hart & Willier, Commercial Paper Under the Uniform

Commercial Code § 2.07[3], at 2-46 to 2-48 (1984). Attestations of both signatures were signed by another person, the same in each case, on lines for that purpose on the lower left. The note is not under seal. Neither the pleadings nor the affidavits before the judge disclose who drafted the note, the circumstances by which DeStefano was induced to become a signatory, or any present consideration for the note from Guinness, such as an agreement to continue supplying Guinness products to Considine or to forbear from suit.

The portions of DeStefano's affidavit which he claims give rise to. material questions of fact are two. First, the affidavit states that, at the time DeStefano signed, he thought he was signing as a witness attesting to Gordon's signature.[1] Second, the affidavit states that, after signing but before delivery to Guinness, DeStefano placed a telephone call to a vice president of Guinness, one Wolfe, to explain that he had not signed the note in his personal capacity but that, if he should decide to purchase Considine, he would be willing to discuss a guarantee of the note. Wolfe "did not disagree with my assessment, and politely said goodbye." A week later DeStefano's lawyer sent a letter to Guinness reiterating DeStefano's position that "he never intended to execute that [n]ote in an individual capacity and does not believe that he is personally liable on the [n]ote." Neither the DeStefano affidavit nor his attorney's letter suggests that Guinness at any time affirmatively indicated agreement with DeStefano's assessment of his legal position after signing . the note. On the other hand, Guinness did nothing to warn DeStefano that his assessment might be inaccurate.

Building on this factual base, DeStefano maintains that there were (as we interpret his brief) several factual issues that are

---

[1] There is also, in the affidavit, a hint that DeStefano may have thought he was signing in a representative capacity for Considine. This possibility is not now pressed, and it would not avail DeStefano in any event. See G. L. c. 106, § 3-304(2)(*b*), and *First Safety Fund Natl. Bank* v. *Friel*, 23 Mass. App. Ct. at 584-585. Without more, an undisclosed, subjective intention not to assume personal obligation is insufficient to prevent summary judgment. See *Commonwealth Bank & Trust Co.* v. *Plotkin*, 371 Mass. 218, 221-222 (1976).

material to his liability on the note. The first, more hinted at than argued, is that DeStefano may have affixed his signature as an accommodation to Guinness and, if so, is exempt from liability to Guinness under the principle now codified in G. L. c. 106, § 3-415(5). See *Great Barrington Sav. Bank* v. *Day*, 288 Mass. 181, 184 (1934); *Leonard* v. *Woodward*, 305 Mass. 332, 334 (1940). While the status of signatories as accommodation parties is often a question of fact, the record in this case is barren of evidence bearing on the point. DeStefano would have the burden of proving that he signed as an accommodation to Guinness, *Community Natl. Bank* v. *Dawes*, 369 Mass. at 558-560, and in the absence of verified allegations that would warrant an inference to that effect, the mere possibility does not preclude the entry of summary judgment for Guinness. *Ibid.*

DeStefano next argues that, because Guinness did not allege facts to show that DeStefano signed as an accommodation to Considine, DeStefano is to be treated as an ordinary maker, not liable on his promise to pay (other than to a holder in due course) in the absence of consideration, G. L. c. 106, § 3-408, inserted by St. 1957, c. 765, § 1. DeStefano acknowledges that consideration may be furnished by an antecedent debt but argues that, when there are several makers, only those makers are bound who were themselves liable for the debt or who are furnished some present consideration relating thereto, such as the holder's agreement to forbear from suit. Such a distinction between signatories finds no support in the language of § 3-408 (". . . [N]o consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind") and was squarely rejected in *Community Natl. Bank* v. *Dawes*, 369 Mass. at 560 n.10, and in *Arlington Trust Co.* v. *Pappalardo*, 383 Mass. 870, 871 (1981).[2]

---

[2] Other jurisdictions have almost unanimously reached the same conclusion. See *Chaffin* v. *Hall*, 439 So. 2d 67, 69 (Ala. 1983); *General Tire & Rubber Co.* v. *Solomon*, 124 Ga. App. 308, 308-309 (1971); *First Natl. Bank* v. *Achilli*, 14 Ill. App. 3d 1, 6 (1973); *Stockwell* v. *Bloomfield State Bank*, 174 Ind. App. 307, 311-312 (1977); *Newman Grove Creamery Co.* v. *Deaver*, 208 Neb. 178, 180-181 (1981); *International Minerals & Chem.*

DeStefano's most strenuously argued contention is that the telephone call from DeStefano to Wolfe in the Guinness office could be found to have resulted in an understanding, prior to delivery of the note, that DeStefano was not to be held personally liable thereon. Doubtless there are situations in which silence implies assent, see *White* v. *White*, 346 Mass. 76, 79 (1963), but DeStefano's affidavit — the sole source of information about the call — furnishes no basis for such an inference. DeStefano (according to his affidavit) returned to the Considine office with the executed note and "gave the note to the secretary to be mailed via Federal Express to . . . [Guinness]. I then called [Wolfe] personally, to tell him that the note was on its way to him, and that I had not signed the note personally. During this conversation, I told Wolfe that I understood that I had not signed the note in any personal capacity, since I had no financial interest in Considine at the moment, but if the time arose when I did have such an interest, I would discuss a guarantee of the note. [Wolfe] did not disagree with my assessment . . . ." DeStefano's lawyer, a week later, sent a follow-up letter confirming the conversation. Like the affidavit, the letter, which is in the record, makes no claim that Wolfe had agreed to anything — only that DeStefano thought he was not personally liable and had communicated that thought to Wolfe in the phone call.

Nothing in the phone conversation, as related by DeStefano, called for a response by Wolfe. Nothing in the conversation would alert Wolfe that he was being asked to agree to anything. The information that the note "was on its way" could not reasonably have been interpreted by Wolfe to mean that the note was not yet on its way and that delivery was being withheld until Wolfe agreed that Guinness would not attempt to hold DeStefano liable on the note. DeStefano's theory of conditional delivery is simply not supported by the facts stated in the

---

*Corp.* v. *Matthews*, 71 N.C. App. 209, 210-211 (1984); *Musulin* v. *Woodtek, Inc.*, 260 Or. 576, 578-580 (1971); *A. M. Castle & Co.* v. *Bagley*, 24 Utah 2d. 136, 138-139 (1970); contra, *Capital City Bank* v. *Baker*, 59 Tenn. App. 477 (1969).

affidavit. For an analogous allegation of conditional delivery, see *Zielmann* v. *Copelof*, 232 Mass. 393, 396 (1919). Contrast *Diebold Safe & Lock Co.* v. *Morse*, 226 Mass. 342, 344 (1917); *Howland* v. *Plymouth*, 319 Mass. 321, 324 (1946).[3]

*Judgment affirmed.*

---

[3] For purposes of decision we have assumed that evidence of an understanding, at the time of delivery of a note, that one of the makers was not to be held liable thereon would be competent (and that the understanding would be enforceable as between the immediate parties) notwithstanding the parol evidence rule. The assumption is dubious. See *Dodge* v. *Bowen*, 265 Mass. 208, 213 (1928); *Leonard* v. *Woodward*, 305 Mass. at 335; *Sherman* v. *Kaufman*, 348 Mass. 606, 610 (1965); *Trustees of Tufts College* v. *Parlane Sportswear Co.*, 4 Mass. App. Ct. 783, 783-784 (1976); *Santry* v. *Richman*, 6 Mass. App. Ct. 955, 956 (1978); *Federal Deposit Ins. Corp.* v. *Hill*, 13 Mass. App. Ct. 514, 517 (1982). Compare cases governed by G. L. c. 106, § 3-403(2)(*b*), concerning an understanding by the immediate parties to a note concerning the capacity, representative or personal, in which a maker or endorser is signing. See, in this regard, *First Safety Fund Natl. Bank* v. *Friel, supra*.