Troy, Paul E., J.
The plaintiff, Banknorth, N.A., (“Banknorth”) alleges damages arising from defendant, Alticomm, Inc.’s (“Alticomm”), failure to repay several debts. Defendant, Paul L. Barrett (“Barrett”), one of several defendants who had guaranteed Alticomm’s debts to Banknorth, ultimately paid Banknorth the alleged balance due. This matter is before the court on Barrett’s motion to substitute himself for Banknorth as plaintiff. For the following reasons, Barrett’s motion is DENIED.

Background

Banknorth’s predecessor in interest, the Warren Five Cent Savings Bank (“Warren”), made several loans to Alticomm’s predecessor in interest, Eastern Telephone, Inc. (“Eastern”). The loans were secured by promissory notes. In March 2001, Barrett and four co-defendants personally guaranteed the debts. The guaranty agreements contained “dragnet” clauses, making each guarantor unconditionally liable for Eastern’s current and future debts to Warren. The agreements made the guarantors immediately liable upon default, and allowed Warren to pursue claims for overdue debt against the guarantors regardless of whether it had first attempted to collect the debt from Eastern. Each guarantor also gave Warren authority to “make any settlement or other arrangement with the Borrower or any such other party.”
After succeeding to Eastern’s interest, Alticomm defaulted on the notes, leading Banknorth to initiate the case at bar on May 5, 2004. Banknorth originally alleged the defendants were liable for a total of $688,332.53 from several promissory notes. By January 2005, Banknorth claimed only $94,582.41 due from one of the notes. Barrett paid Banknorth that amount. In return, Banknorth delivered an “assignment of note and related documents” which purported to assign to Barrett “all of [Banknorth’s] right, title, interest and privilege” in the outstanding promissory note, and in the personal guarantees signed by Barrett’s co-defendants.
Barrett has attached a copy of a “confidential negotiated settlement agreement” to his motion. The agreement is allegedly a contract between Alticomm, Barrett, the other defendants, and two other individuals. Regarding this case, the agreement recognizes Barrett as “assignee of Banknorth’s claims against Alticomm, Bok, Barrett, Stern, Rasky and Vanecko, which are stated in the lawsuit Banknorth u. Alticomm et al." The agreement provides that all parties will dismiss with prejudice claims from “Barrett as assignee of Banknorth v. Alticomm et al.” According to the document, Barrett’s four co-guarantors agreed he was owed a total of $46,000.00 as a result of the claims which gave rise to this case. The agreement called for Barrett to be paid this amount by July 1, 2005, after which all “dismissal documents” for the case at bar would be released from escrow. Barrett alleges the agreement was never performed.
On June 2, 2006, Barrett moved to substitute himself for Banknorth as plaintiff.

Discussion

A party to a civil action may be substituted under four circumstances: death, incompetency, transfer of interest, or,- in the case of a public officer sued in their official capacity, departure from public service. Mass.R.Civ.P. 25, 365 Mass. 730 (1974). Barrett argues that because Banknorth has transferred its interest in this case to him, this court should allow him to be substituted as plaintiff. The threshold question, then, is whether Barrett has acquired Banknorth’s interest.

*683
I.Once Barrett Paid, the Debt, Banknorth’s Interest Was Extinguished and the Other Guarantors Were No Longer Liable on the Note.

Once a debtor pays a debt, the debt may no longer be enforced. See Gen. Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 586 (1992) (holding debtor discharges debt by delivering check, backed by sufficient funds, to payee); Bryant v. Smith, 10 Cush. 169, 171 (1852) (holding payment by comaker of note extinguished debt). A co-maker who pays a debt thus cannot later enforce the instrument of that debt against other co-makers. Bryant, 10 Cush, at 171 (finding “merger” of co-maker and creditor roles when debtor held promissory note on same debt); Awedv. Marisco, 27 Mass.App.Ct. 1140, 1141 (1989) (limiting co-maker’s remedy, under Uniform Commercial Code, to equitable contribution from other comakers).[2]
Massachusetts law provides that liability on a negotiable instrument is terminated “by an act... which would discharge an obligation to pay money under a simple contract.” G.L.c. 106, §3-601(a) (2004). Therefore, once the debt was extinguished, Barrett’s co-guarantors’ liability was extinguished, and Banknorth could not transfer to Barrett any interest in enforcing their promises.

II.Barrett’s Agreements With Banknorth and With His Co-Guarantors Do Not Create a Legal Interest in an Extinguished Debt.

Barrett argues that Banknorth formally assigned him its interest in the note, and in his co-guarantors’ unlimited guarantees. Barrett also emphasizes that the settlement agreement with his co-guarantors refers to him as Banknorth’s assignee.[3] However the parties may have chosen to label the nature of Barrett’s interest in this matter, private contracts cannot rewrite the law. This court cannot enforce an extinguished debt.
Barrett points to the language in the guaranty agreements giving the creditor freedom to assign its claims. Such language became moot once Banknorth no longer had an enforceable claim to assign. Barrett cites case law speaking to the ability to assign a claim. Such cases are not on point, because the ability to assign a claim requires an enforceable claim to begin with.

III.There Are No Other Grounds Upon Which Barrett May Be Substituted As Plaintiff.

Barrett raises several alternative arguments, none of them based upon any of the Mass.R.Civ.P. 25 grounds for substituting a party. Because Barrett’s arguments lack a basis in the rules of procedure, and because there is no evidence to suggest he cannot pursue claims against his co-guarantors in an independent action, this court declines to adopt any of Barrett’s proposed alternatives.
For example, Barrett alleges his co-guarantors breached the settlement agreement. Whether they did or not, Banknorth did not transfer any interest in a breach-of-contract claim to Barrett. There is no basis in Mass.R.Civ.P. 25 for using a completely separate claim as grounds to substitute a new party as plaintiff.
Barrett also cites his ability to claim contribution from his co-guarantors as grounds for substituting him as plaintiff. While “co-guarantors may be liable to one another for equitable contribution,” Clark v. Trumble, 44 Mass.App.Ct. 438, 446 (1998), Banknorth has transferred no such claim to Barrett.
Finally, Barrett cites equitable subrogation as grounds to substitute him as plaintiff. As he acknowledges, this doctrine is applied at the court’s discretion, to prevent unjust enrichment. See East Boston Savings Bank v. Ogan, 428 Mass. 327, 329-30 (1998) (specifying criteria for equitable subrogation when sale of property extinguished one of several mortgages). Given Barrett’s ability to bring an independent claim for contribution, there is little danger of unjust enrichment in the case at bar. Moreover, this court will not use equitable discretion to undermine settled law that a debt, once paid, cannot be enforced against others who had shared the payor’s liability.
To substitute Barrett as plaintiff, based on claims completely separate from Banknorth’s original claim, would set a precedent under which cases could meander on long after the original cause of action ended, with parties switching sides as plaintiff or defendant with every new circumstance. Such was not the intent behind the Massachusetts Rules of Civil Procedure, which are designed to provide for “the just, speedy and inexpensive determination of every action.” Mass.R.Civ.P. 1, 365 Mass. 730 (1974).

ORDER

For all of the foregoing reasons, the defendant’s, Paul L. Barrett, Motion to Substitute the Plaintiff is DENIED.

The case at bar may be distinguished from Bryant and Awed, in that Barrett paid the note in his capacity as a guarantor, not a co-maker with primary liability. However, the terms of Barrett’s guaranty imposed unconditional liability for Alticomm’s debt. Barrett accepted the same level of liability as Alticomm, and his payment extinguished the debt the same as a payment from Alticomm would have. Therefore, he is likewise limited to the same remedy against his co-guarantors that a maker of a note would have against co-makers.

This reference is technically correct, since Banknorth assigned Barrett “all of’ its interest in the note and in his co-guarantors’ obligations (regardless of whether such interest turned out to be nonexistent).